We'll now continue with case number three of the day. This is Appeal 21-1665, Liberty Mutual Fire Insurance Company v. Clayton. We'll begin with argument from the appellant, Mr. Wolf. Thank you, Your Honor. May it please this honorable court and Ms. Hartman, I would like to reserve two minutes for rebuttal, if that pleases the court. That's granted. Thank you, Your Honor. This is an appeal from a judgment of the Honorable Judge Myerscough. The issue in this case, and what I want to focus on, is the language of the liberty policy and how that meets with the case law that we've depended upon from the moment of the motion for summary judgment throughout the arguments in this case. And while it's fully been briefed, I believe it would be very important for this court to focus on the language of the policy, because this is a declaratory judgment action arising out of debt of Kinsey in this case. That policy says, if an insured regularly provides home daycare services to a person other than an insured and receives monetary or other compensation for such services, that enterprise is a business, and then it excludes coverage for injuries arising out of that business. Why do I quote that language? Because I believe that language is a mirror image of the Illinois case law that we say governs this case. Remember, in the case of Allstate v. Mappas, the third district of the Illinois Appellate Court, there's one Illinois Appellate Court, there's five districts. The third district says the terms of the policy must be read according to their plain meaning. And then it says in determining whether a business pursuit exception, exclusion applies to a particular set of facts, what do we look at? Number one, is the activity regular and continuous. Mr. Wolfe, you're relying on Mappas that had different policy language, and the court in Mappas is looking at the policy language at issue in Mappas. It seems here we have unambiguous policy language relevant to this case between Liberty Mutual and the insured that talks about the monetary or other compensation for such services. That's unambiguous. So why do we need to look to Mappas that has different language? We look to Mappas that has different language that it was interpreting because what Liberty has done in writing their contract has, in my mind and in the language used by the Mappas court, mirrored what Mappas said. But it doesn't. It has different language than the Mappas policy. I understand what you're saying. I think you started, I'm sorry, I don't mean to talk over you, but I think you started out absolutely right, Mr. Wolfe, that we need to look to the policy language that is at issue here, and the policy language regarding a home daycare business is what you quoted, which is not what's in Mappas. So I think your reliance on Mappas doesn't work here, given the language at issue in this policy. And here's why I respectfully disagree and would ask you to look at what the court said. And what I'm saying is that the policies are different. Yes, all states policy was different than Liberty's policy language. But what the Mappas court said was they set forth the two part test. And that's exactly the language that is used in the Liberty policy. They said, is the activity regular and continuous? That's what the Mappas court said. And then the Liberty policy says, if an insured regularly provides home daycare services to a person, then the Mappas court said at least some of this has to go to an insurance livelihood. And the Liberty policy says, or other compensation for such services. So that's the argument that is made. So why is this language ambiguous? Why do we interpret it differently? I would say there's two reasons. Number one, respectfully, I believe the district court misused or misapplied the presumptions that should be applied in a motion for summary judgment. Why do I say that? Because in the court's order, the district court presumed that the compensation or the monetary exchange between the Clayton's and Ms. Glick, the pro se defendant in this case, presumed such compensation contributed to her livelihood when there's no evidence that it was anything other than exchange of money. We can see there was an exchange of money. We don't. Why would that be an unreasonable inference? She's running a daycare business out of her home. She's been doing it for 13 or 14 years and she's getting paid for it. But go back to the policy language, Your Honor, because that's what we have to do. Compensation is what the policy language says. But I'm going back to the first clause. If the insured regularly provides home day care services to a person. My point is, is that the language that was utilized by Liberty is outside of this regular business that they're arguing. They use the language home day service care services to a person. So what we do know is that these services were provided to Kinsey over this seven week period and they weren't necessarily regular. Now that the plaintiff in this case, Liberty argues, well, overall, her services were regular because she provided these services over a period of 14 years from various and numerous people. True, true enough, but that's not what their policy says. Their policy said provides home day care services to a person. And when we're interpreting the contract, when we're interpreting in and providing inferences in a motion for summary judgment, it is entirely reasonable to look at this clause and say, you got to look at the relationship between the insured and the individual that is injured. And that was not done. So I don't understand what you're saying, Mr. Wolf. Is it your argument that the fact that they took the child to the home day care over seven weeks whenever they needed the coverage, which was a couple of times a week, that that's not regular? I didn't understand that to be the argument in your briefs. Well, that's what I'm responding here. I've always argued that the language did not apply here. So is that your argument now that they took the child to the day care for the seven weeks and they took her every week a couple days, that that should not be considered regular under the language of the policy? Well, it's not. And yes, that's my argument. One of my arguments. I have overgone my time. I've reserved two minutes. The remainder will be preserved. Reserved. Thank you, Mr. Wolf. We'll now move to argument from the Appalee. Ms. Hartman. Thank you. May it please the court. Good morning, Your Honors. My name is Kimberly Hartman, and I'm here representing the Appalee Liberty Mutual Fire Insurance Company. Your Honors, the facts in this case are undisputed, and they clearly establish that Kenzie Shuler's death arose out of Kelly Glick's operation of a home day care business, for which there is no coverage under Liberty Mutual's homeowner's policy. Here, there is no dispute that Kenzie Shuler died while under Glick's care in Glick's home while Glick was providing day care services to her in return for cash payments of $25 per day. It is also undisputed that Glick typically watched three other children along with Kenzie Shuler, and that she charged each family a daily fee for her services. We agree with counsel that the policy language, the specific policy language in Liberty Mutual's homeowner's policy controls the interpretation and the ruling in this case, and that the district court correctly determined that that language was clear and unambiguous and excluded coverage for the underlying lawsuit. The policy in question contains a daycare endorsement, which is set out in bold, all caps, and states no section two liability coverage for a home day care business. Ms. Hartman, with regard to that endorsement, is that something that's common, or is that something that would have been added by the agent during the course of the negotiation for the policy? It is a common endorsement. The business pursuits exclusion is contained in almost every homeowner's policy that's issued, and it is not unusual. It is, in fact, common to also include a specific example of a type of business for a home day care business. In this policy, if you read that language, it states, if an insured regularly provides home day care services to a person or persons other than insured and receives monetary or other compensation for such services, that enterprise is a business. Here, the undisputed facts establish both regularity as well as monetary or other compensation for such services. With respect to regularity, the fact that Kenzie Shuler was watched, 730 to 530, Monday through Friday, on days when her parents worked, that Glick provided care for three other children in her home at the same time, that none of the children were insured and none of them were related to Glick, and that Glick had been operating a day care business off and on for 14 years, all clearly and unambiguously bring the facts within this policy endorsement. With respect to whether or not Glick received monetary or other compensation for services, money is a type of compensation. It's expressly stated in the endorsement. Here, there's no dispute that Glick received cash payments of $25 for each day that she was providing care to Kenzie Shuler and that she also received cash compensation for every other family whose child she watched. The admissions, the written discovery, the deposition testimony, and the other record evidence in this case uniformly show that these payments were provided as compensation for Glick's day care services. In Clinton's opening brief, she states, Clinton gave defendant Glick $25 a day when Glick was providing home day care services for the infant. These cash payments came at the end of the week on the days Glick cared for the infant. The district court was therefore correct in determining that the facts in this case clearly brought the underlying lawsuit within the meaning of both the endorsement and the business pursuit exclusion generally. The supporting authorities that Liberty Mutual cited, specifically Allstate v. Smiley, Theo v. Aetna, the Springer case, the Featherston case, all which interpreted and discussed either the exact same policy language at issue or substantially similar policy language at issue, all support the conclusion that the business activities, the daycare activities engaged in by Glick are excluded under the policy. And Clinton provides no rebuttal to those arguments, which is quite telling. With respect to the Mathis test, as Judge Philip Eve noted earlier, the Mathis test, the Mathis language, policy language in Mathis is different. It doesn't control the interpretation of the policy language at issue here. But even if this court were to look at the Mathis test, the same facts that support, the same facts that bring this case, the underlying case within the Liberty Mutual policy language also satisfy the Mathis test. That Glick's activity was regular and continuous and that it provided some economic profit or some contribution to our livelihood. With respect to economic profit, which Clayton refers to or spends some time on in her brief, all of the examples in the cases cited in Liberty Mutual's brief as well as in Clayton's brief, which discuss what would be considered compensation or what would be considered something that provides a profit, all support the argument that $25 per day is economic profit, does constitute compensation. In Mathis, it was $3 per hour. In Moore, it was $25 per week. In Watkins, it was $40 per week. In Featherston, it was $50 per week. In Springer, it was $65 per week. This all supports Liberty Mutual's argument, again, which Clayton does not rebut in the reply brief. With respect to the definition of compensation, again, there's no dispute. There can be no dispute that compensation clearly and unambiguously encompasses monetary payments for the daycare services provided. In fact, the Illinois Supreme Court in the Clark case held that the plain and clear meaning of compensation includes payment for value received and services rendered. This rebuts the argument that somehow reimbursement is excluded from the definition of compensation. Value received clearly would include reimbursement. The Illinois Supreme Court has also referred to Black's law dictionary definition of compensation, which is remuneration or other benefits received in return for services rendered. Again, this supports the plain and unambiguous interpretation of compensation as correctly applied by the district courts. The two cases that examine this argument that Clayton makes with respect to reimbursement was reviewed or analyzed, considered in two cases, which examined the exact same policy endorsement at issue in our case. And those are the Featherston case and the Springer cases. And both of those courts determined that or rejected the argument that compensation did not include reimbursement, even if those services or the amount charged was solely for reimbursement expenses. The final point that Liberty Mutual would like to make is that Clayton, in her opening brief and in her reply brief, provides no legal support, virtually no legal support for her argument in support of reimbursement. Not only that, Clayton, in opposing summary judgment, had a duty to not rest on referencing general deniers, but had a duty to introduce specific evidence demonstrating a dispute of fact. She didn't do that. She didn't propound discovery in this case. She didn't take quick depositions. She didn't file an affidavit in support of her motion for summary judgment. And she didn't advise the district court that she needed additional discovery to respond. For all of these reasons, Liberty Mutual respectfully requests that this court defer. Thank you, Ms. Hartman. Mr. Wolfe, we'll turn back to you for rebuttal. Thank you, Your Honor. May I introduce the court very briefly? It is the Clayton's position that Liberty did not satisfy her burden on summary judgment for the very reasons that we stated herein regarding their ability to show whether or not this is a continuous course of conduct or, as their policy says, regularly provided services. And number two, we relied upon the Mathis test that they did not show that this was a business pursuit or compensation for such services. That being the case, and given the nature of summary judgment, we believe they did not satisfy their burden. I am open to any questions from the court. Thank you, Mr. Wolfe. Thank you, Ms. Hartman. The court will take the case under advisement.